UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-386-KSF

MARY S. SMITH                                                                                    PLAINTIFF

v.                                              **OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security                                                                          DEFENDANT

* * * * * * * * * * * *

The plaintiff, Mary S. Smith, brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of an administrative decision of the Commissioner of Social Security denying her

claim for period of disability and disability insurance benefits ("DIB") and supplemental security

income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision,

as it is supported by substantial evidence.

**I.      OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security

Act, the regulations provide a five-step sequential process which the administrative law judge must

follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525,

529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)      If the claimant is currently engaged in substantial gainful activity, she is not
disabled.

(2)      If the claimant is not doing substantial gainful activity, her impairment must
be severe before she can be found disabled.

1

(3)     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4)     If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5)     Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.*   The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such

2

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.    PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Smith previously filed applications for benefits that were denied by the administrative law judge ("ALJ") on February 24, 2005 [TR 35-46]. On judicial review, the district court affirmed the ALJ's decision [TR 24-34]. Consequently, the issue of Smith's disability on or before February 24, 2005 is res judicata.

Smith subsequently filed this application seeking benefits on June 10, 2005, alleging an onset date of February 25, 2005 [TR 73]. With respect to Smith's claim for DIB benefits under Title II of the Social Security Act, her insured status expires on December 31, 2005. Thus, for purposes of her Title II DIB benefits, Smith must show that she became disabled in the ten months between the prior ALJ's February 2005 decision and the December 2005 expiration of her insured status. Her claim for SSI benefits is not affected by this insured status requirement. Moreover, based on *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 842 (6th Cir. 1997), the Commissioner is bound by findings made in the February 2005 ALJ decision absent evidence of changed circumstances.

In this case, the ALJ conducted a hearing on March 21, 2007, and issued his opinion denying Smith's application for benefits on June 5, 2007 [TR 13, 302]. At the time of the ALJ's decision,

3

Smith was 52 years old.  Smith has a high school education and past relevant work as a cashier [TR 312-13].  She alleges disability due to degenerative disc disease, fibromyalgia, plantar faciitis, depression, and anxiety [TR 84].

The ALJ began his analysis at step one by determining that Smith has not engaged in any substantial gainful activity since her alleged onset date of February 25, 2005 [TR 15].  At step two, the ALJ found that Smith suffers from the following severe impairments:  degenerative disc disease, fibromyalgia, plantar faciitis, depression, and anxiety [TR 15].  Continuing on to the third step, the ALJ determined that these impairments or combination of impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments [TR 18].

Reviewing the administrative record and considering Smith's testimony, the ALJ concluded that Kenner maintained the residual functional capacity to perform medium work activity with the following limitations: a limited but satisfactory ability to deal with coworkers, interact with supervisors, deal with work stresses, maintain attention and concentration, and understand, remember, and carry out detailed to complex instructions [TR 18].  Considering the testimony of the vocational expert, the ALJ found that although Smith could perform her past relevant work as a cashier [TR 20]. Consequently, the ALJ determined that Smith was not disabled within the meaning of the Social Security Act [TR 20].

The ALJ's decision that Smith is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on June 5, 2007 [TR 10]. Smith has exhausted her administrative remedies and filed a timely action in this Court.  This case is now ripe for review under 42 U.S.C. § 405(g).

### III.    ANALYSIS

On appeal, Smith argues that the ALJ's determination was not based on substantial evidence or decided by the proper legal standards for several reasons.  First, Smith argues that the ALJ erred by rejecting the opinions of her treating physicians and failing to provide adequate rationale for the rejection.  Second, Smith argues that the ALJ erred by rejecting certain mental restrictions assessed by Dr. Syed Raza.  Finally, Smith argues that the ALJ erred by failing to provide good reasons for rejecting the physical assessment of Dr. Sharon Colton.

Beginning in 2001, Smith has been treated at the Cloverfork Clinic by Dr. Colton.  The records after February 2005 show essentially the same diagnosis and treatment regimen as the records from 2001 to 2004 which were at issue in the previous adjudication.  Essentially, Smith has been treated for fibromyalgia, back pain, anxiety/depression, and plantar faciitis with various medications and occasional injections in the heel [TR 160-68, 236-61, 262-79]. These records fail to reveal any deterioration in her condition; in fact, Smith was advised in 2006 to start a walking program and was counseled on the benefits of regular exercise [TR 266].

Records related to Smith's mental health also show no significant change or deterioration since the February 2005 adjudication.  The prior ALJ relied on a treatment note from Dr. Raza, a staff psychiatrist at Comp Care, who diagnosed anxiety disorder and mood disorder due to arthritis and fibromyalgia and assessed a Global Assessment of Functioning ("GAF") score of 55 [TR 41]. The GAF scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.  A GAF score of 50-60 represents "moderate" symptoms.  *See* Global Assessment of Functioning (GAF) scale, American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, (2000).   Current records from Cumberland River

5

Comprehensive Care Center ("Comp Care") in January 2005 only reveal a lack of insight and a self-reported depressed mood  [TR 158]. Smith missed a scheduled appointment in March 2005 [TR 157]. On another visit with Dr. Raza (the date on the treatment note is illegible), Smith was responding well to medications and reported depression at 2/10 and anxiety at 3/10 [TR 156]. In April 2005, Smith told her therapist and Dr. Raza that she had been sick with the flu, and reported more depression and anxiety.  Her medications were unchanged.  Smith missed her next scheduled appointment in June 2005.  When she returned in August 2005, she reported sickness and family stresses, but was assessed as stable and making progress [TR 150].   She again missed her appointment two months later, and the record contains no further evidence of treatment.

Although Dr. Raza performed a consultative examination in March 2006, he made no reference to his previous treatment of Smith [TR 169-74].  In fact, he referred only to treatment by some other psychiatrist.  He assessed a GAF score of 60-65, higher than the 55 he assigned in 2003 [TR 41, 172].  Nothing in the medical record reveals a change or worsening of Smith's condition that would support a change in her work-related abilities.  Thus, in the absence of evidence of changed circumstances, the Commissioner is bound by his prior finding that Smith is not disabled. *Drummond*, 126 F.3d at 842.

Nevertheless, Smith argues that the ALJ failed to give proper weight to the opinions of Dr. Colton and Dr. Raza.  With respect to Dr. Colton, Smith relies on an assessment completed by a physician's assistant in 2004 and rejected by the prior ALJ because it was inconsistent with other evidence, including the ALJ's own observations, and because the person who signed the assessment was not an acceptable medical source as defined by 20 C.F.R. §§ 404.1513(a), 416.913(a) [TR 40, 280-82].  In her instant application, Smith re-submitted a copy of the 2004 form with a 2007

6

signature by Dr. Colton - the only change to this form [TR 280-82]. Dr. Colton did not state whether she considered the form an accurate representation of Smith's current abilities in 2007, or simply agreed with the assessment of Smith's limitations in 2004.

The ALJ correctly declined to give Dr. Colton's 2007 signature on the 2004 assessment controlling weight, even though Dr. Colton is a treating physician. There is simply no evidence that Dr. Colton examined Smith or exercised any personal medical judgment in rendering the opinion [TR 16-17]. It simply appears that she signed a form completed more than three years earlier. Thus, the ALJ properly rejected this assessment.

The ALJ also correctly rejected the 2004 assessment as signed by the physician's assessment because the record does not contain any confirmatory findings. In determining the weight to be applied to "other source" opinions from sources who are not "acceptable medical sources" (like a physician's assistant), the ALJ must provide some rationale for rejecting the opinion. *See* Social Security Ruling 06-03, 71 Fed.Reg. 45,593, 2006 WL 2263437 (2006). In this case, the ALJ noted that the physician's assistant had not signed the assessment since 2004. Moreover, the ALJ determined that the physician's assistant's treatment notes did not contain confirmatory findings. Thus, the ALJ properly rejected the 2004 assessment by the physician's assistant.

With respect to Dr. Raza's opinion, Smith contends that the ALJ failed to accept all of the limitations contained in his March 2006 consultative examination report. Dr. Raza found that Smith had a fair ability to understand and remember simple one and two-step instructions; sustain concentration and persistence; and interact with friends, supervisors and the public [TR 173]. He further stated that she had poor coping skills and responded to pressures abnormally [TR173].

7

Finally, he determined that she was unable to complete tasks in a normal amount of time due to back pain.

At the hearing, the ALJ presented Smith's residual functional capacity, including certain mental limitations, to the vocational expert. Specifically, he asked the vocational expert to consider a fair ability to understand and remember simply one and two-step instructions; sustain concentration and persistence; and interact with friends, supervisors and the public. The ALJ also included poor coping skills and abnormal responses to pressures; however, the vocational expert responded that although this limitation was too broad and nonspecific for response, the other mental limitations would not preclude employment [TR 332-333].

Smith contends that the ALJ erred by omitting Dr. Raza's statement that Smith was unable to complete tasks in a normal amount of time due to back pain [TR 173]. Because Dr. Raza had not indicated any basis for evaluating Smith's back pain, either by reviewing records or by conducting any examination relevant to her back pain, the ALJ reasonably concluded that Dr. Raza's assessment that Smith had a limited ability to complete tasks due to back pain was based only on her subjective presentation of her symptoms [TR 333]. Thus, the ALJ did not err by failing to include this limitation in his hypothetical to the vocational expert.

## IV.     CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

    (1)     the plaintiff's motion for summary judgment [DE #10] is **DENIED**;

    (2)     the defendant's motion for summary judgment [DE #11] is **GRANTED**;

(3)      the decision of the Commissioner is **AFFIRMED** as it was supported by substantial evidence;

(4)      a judgment consistent with this Opinion & Order will be entered contemporaneously.

This July 18, 2008.

**Signed By:**

**_Karl S. Forester_**    K S F

**United States Senior Judge**